**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

KIRK ONEAL WIGGINS,                                   :

      Plaintiff,                                              :

vs.                                                                :          CA 12-0746-C

CAROLYN W. COLVIN,                              :
Acting Commissioner of Social Security,
                                       :

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 22 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the July 22, 2013 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 22 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to degenerative disc disease with spondylosis of the cervical spine and low back pain. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1.** **The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.**
>
> **2.** **The claimant has not engaged in substantial gainful activity since December 17, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).**
>
> .    .    .
>
> **3.** **The claimant has the following severe impairments: degenerative disc disease with spondylosis of the cervical spine and low back pain (20 CFR 404.1520(c)).**
>
> .    .    .
>
> **4.** **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).**
>
> .    .    .
>
> **5.** **After careful consideration of the entire record, and in the absence of alcohol abuse, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Function by Function: No climbing ladders, ropes, scaffolds; occasional climbing of ramps and stairs; occasional balancing, kneeling, crouching, crawling, stooping; frequent reaching; avoid concentrated exposure to vibration.**
>
> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

.    .    .

The claimant presented for the hearing wearing a cast on his left leg and using a crutch. The claimant testified as follows: He lives in Camden, Alabama. . . . He is 40 years old. He is five feet five inches tall and weighs 155 pounds. He recently lost 15 pounds but he was not trying to lose weight. . . . His mother and his aunt drove him to the hearing from Camden, which is a one and a half hour drive. They made a couple of stops during the trip to use the bathroom and move around a little bit. . . .

He worked at an automotive plant lifting 40 to 45 pounds. He left this job at Staffing Services because he could not lift the 40 or 45 pounds. He quit in 2008. He got benefits at Plus TEC before this job. He started this job as a die setter for eight months. He was terminated after he got hurt and got unemployment benefits until around the middle of 2010. In 2007, he was injured and got an attorney but two years after the case [was filed], nothing was done and he lost the claim. He had moved. He was applying for jobs but not in Camden because he had no transportation.

When questioned by counsel, the claimant stated that he saw the doctor after he was hurt on the job, his back still hurts and he has pain at level 8 or 9 daily. At first he was told that he was just bruised up real bad[.] [H]e does not have full range of motion in the neck. He has pain at level 8 or 9 in the neck. . . . He used to have a back brace for about one and a half years and he had to lie down a good bit. He lies down five or six hours every day. Dr. Cook is his main doctor and he has seen her since March 2010. She talks about alcohol abuse and claimant stated that . . . [h]e went to the emergency room and his stomach was bloated really bad, he had a bloated liver and he lost some weight. He takes Hydrocodone. He takes samples from Dr. Cook. . . . Before the accident last week, he would walk. The accident on Friday before this hearing, caused three broken bones in his left foot. The accident was caused by two other people racing.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's degenerative disc disease with spondylosis of the cervical spine and low back pain, the claimant presented to Work [W]ise Occupational Medicine and Industrial Rehabilitation on June 25, 2007, reporting that he fell off a machine injuring his neck and low back. He was alert and oriented. He was in moderate distress. He was assessed as having multiple contusions, cervical and lumbar strain.

The claimant presented to Orthopedic Specialists of Alabama on July 26, 2007 complaining of neck pain. An x-ray of the cervical spine showed some mild spondylosis.

The claimant presented to Orthopedic Specialists of Alabama on August 16, 2007, reporting that his neck was improved. His back was troublesome. Dr. Cordover assessed neck stable mostly improving and back pain with radiculopathy.

The claimant presented to Image South Montclair Road on August 28, 2007 with a history of low back and bilateral pain since June 8, 2007 following trauma. There had been no surgery or malignancy. Routine studies were performed. Dr. Thomas G. Harrell opined that the claimant had a negative magnetic resonance imaging (MRI) scan of the lumbar spine.

The claimant presented to Orthopedic Specialists of Alabama on October 10, 2007. He had been followed by Dr. Andrew M. Cordover for persistent low back discomfort. He had an MRI of the lumbar spine, which was completely normal and reviewed by Dr. Cordover and the radiologist. He described low back pain. He had been returned to work at fairly heavy work. He was able to do that. His pain was axial pain. There was no radicular pain. There was no weakness or numbness in the lower extremities. He revealed that it was intermittent and sharp. Dr. Michelle J. Turnley was not sure what this represented. During the physical examination, he was in no acute distress. He looked sleepy. His mental status was alert and he was oriented to person, time and place. His mood was pleasant and appropriate. Examination of the lumbar spine was within normal limits, except he had tenderness to minimal palpation of the lumbar spine. Dr. Turnley assessed lumbar sprain/strain. The plan was to give him Ultram and Robaxin.

The claimant presented to Orthopedic Specialists of Alabama on December 5, 2007. He had been seen by Dr. Turnley once previously. He had a full and thorough evaluation by Dr. Cordover. He did not have a surgical lesion. He had persistent low back pain in that area. He described that it was hard for him to do his job. He had increased pain when he moved. He related that he had taken Ibuprofen on his own because the Ultram did not help and the muscle relaxer did not help. On examination, he was not acutely ill in appearance. He ambulated with a normal gait and station. The motor and sensory examination of the lower extremities was intact. Dr. Turnley's impression was persistent low back [pain], he relates

that the pain is worsening. The plan was to start him on Ibuprofen and Darvocet.

The claimant presented to Orthopedic Specialists of Alabama on January 9, 2008 complaining of having persistent low back and left hip discomfort. He had a normal MRI scan. Apparently he had been calling in and having a significant amount of discomfort. He was on Darvocet and Ibuprofen. He pointed to the left side of his low back. During the physical examination, he was not acutely ill in appearance. He did ambulate with a forward flexion posture and a left antalgic gait. He was tender to palpation over the left gluteus medius and maximus. Otherwise, the motor and sensory examination was intact. He received a trigger point injection. He tolerated the procedure well. He was given Lortab.

The claimant presented to Orthopedic Specialists of Alabama on March 11, 2008 complaining of persistent low back pain following a lumbar strain. Dr. Turnley noted that she had given him just enough for one tablet of narcotic a day, although his condition really did not warrant that; however, he took them not as prescribed and took them all up and he was out of them. Dr. Turnley explained to the claimant that this was not appropriate. He said that the medication did help but that he needed some more. He said that the injection helped as well. During the physical examination, he was not acutely ill. He sat slouched down in the chair. He had no trouble getting up and down. His lumbar spine examination was within normal limits, and his motor and sensory examination in the lower extremities was within normal limits. Dr. Turnley's impression was persistent pain complaints. Dr. Turnley opined that she believed the claimant's pain complaints were out of proportion to his physical examination. Additionally, he did not take the narcotic as prescribed so she would no longer provide any narcotic medication to him. The plan was to provide Lidoderm patches, Ibuprofen and Flexeril.

The claimant presented to Orthopedic Specialists of Alabama on May 7, 2008 describing increasing low back and left leg discomfort. He related that it felt like somebody was sticking knives all through his back and that he could not feel his left leg. He also related that the medication was not strong enough. The claimant had been working a different job. He said he quit his job because of increased pain. During the physical examination, he was not acutely ill. He had normal lumbar range of motion and normal motor and sensory examination of the lower extremities. Dr. Turnley's impression was lumbar sprain/strain. The plan was to continue Ibuprofen, Flexeril and add Neurontin.

The claimant presented to Orthopedic Specialists of Alabama on September 4, 2008 complaining of persistent sharp sticking pain in his back, and he related that the medication was not working. Therapy had not really helped. His chart was reviewed. He sustained a fall of about three feet over a year ago. At that time he had a completely normal lumbar MRI. He had maintained a normal examination. During the

physical examination, he ambulated freely and without an assistive device with a normal gait and station. He did not appear to be in a significant amount of discomfort. Motor and sensory in the lower extremities remained intact with no change. Dr. Turnley's impression was lumbar sprain/strain, resolved. Dr. Turnley opined that persistent low back pain complaints[] could be related to another medical condition and this was explained to the claimant. Dr. Turnley recommended that he seek medical help from his primary care physician as she could not relate his current issues to the injury over a year ago.

The claimant presented to the Pine Apple Health Center on March 3, 2010 complaining of neck and back pain. The claimant reported that he had a work[-]related accident in 2007. The claimant stated that the pain was getting worse. On examination, his general appearance was normal. Examination of the neck revealed tenderness to palpation over 7-8 in the cervical spine. He had good range of motion. Examination of the bones, joints and muscles was significant for aching over L3-5. The motor and sensory functions were normal. Dr. Roseanne Cook assessed chronic neck and lumbar pain. The claimant was given a Depo/Decadron injection and prescribed Ibuprofen and Celebrex. The claimant was instructed to follow up in four to six weeks.

The claimant presented to the Pine Apple Health Center on April 21, 2010 complaining of back and leg pain. The claimant felt that he needed something stronger than Celebrex. Examination of the neck revealed good flexion. Examination of the extremities revealed some discomfort. He had good rotation to the left and to the right side. During the back examination, straight leg raise was positive on the left side. The pain was reportedly worse on the left side. The certified nurse practitioner (S.J. Kelly) assessed chronic neck pain. The nurse practitioner prescribed Arthrotec[].

The claimant presented to the Pine Apple Health Center on May 26, 2010 reporting that the Arthrotec did not help the pain at all. He complained of pain on the left side of his neck and on the left lower back area. On examination, he had good range of motion. Dr. Cook assessed chronic neck and lumbar pain. The claimant was given a Decadron and Depo injection. The claimant was instructed to follow up in six to eight weeks.

The claimant presented to the Pine Apple Health Center on January 6, 2011 reporting that he had no relief from the medication or steroid shots. He continued to have moderately severe pain in his neck and it was radiating to the lumbar and left thigh area. He said he had to sleep on the floor sometimes to get mild relief. Dr. Cook did not perform an examination of the neck, or the back, or the extremities. Dr. Cook assessed cervalgia secondary to trauma to the neck, osteoarthritis. Dr. Cook prescribed Lunesta, Relafen, and Savella.

The claimant presented to the Pine Apple Health Center on February 9, 2011 complaining of continuing back pain with radiation to the left posterior thigh and neck pain. The claimant stated that the medication given to him at the last appointment did not help. He continued to have moderate to severe pain. He was taking Lunesta and it was helping him sleep. On examination, he was in no acute distress. Dr. Cook assessed back pain with radiation, and neck pain secondary to back pain.

The claimant presented to the Pine Apple Health Center on May 4, 2011 complaining of backache. Dr. Cook did not perform an examination of the neck, or an examination of the back, or an examination of the lower extremities. Dr. Cook assessed chronic back pain secondary to a work injury in 2007, and sleep disturbance. The plan was to get x-ray reports from Orthopedic Specialists of Alabama. The claimant was prescribed Lortab.

The claimant presented to the Pine Apple Health Center on July 1, 2011 complaining of back pain. He admitted that he got some relief from the Savella, Arthrotec and Lunesta but when the medication wore off he was back in severe pain. He had sciatic irritation to the left thigh. He was unable to walk on his heels at all. He could not stoop and flexing his back greatly increased the pain.

.     .     .

In terms of the claimant's allegations that he recently lost 15 pounds but was not trying to lose weight, Dr. Cook's records show that the claimant has actually gained weight. The claimant weighed 126 pounds on June 21, 2010 and 154 pounds on July 1, 2011.

.     .     .

Although the claimant has severe impairments as previously set forth herein, I find the claimant has mild to moderate pain, for the reasons previously provided, and such has been considered in formulating the residual functional capacity at Finding of Fact Number 5.

The claimant has been prescribed and has taken appropriate medications for the alleged impairments. The claimant's use of medications does not suggest the presence of impairments[] which are more limiting than found in this decision.

Although the claimant at times[,] from the alleged onset date to the present, has been on medications that when taken as prescribed, for the periods taken, could cause some side effects, I find that at times, the claimant had mild to moderate side effects, as opposed to totally debilitating ones, and such have been considered in formulating the residual functional capacity at Finding of Fact Number 5.

The claimant completed a Function Report—Adult[—]on January 25, 2010 indicating that he lived in a trailer with his girlfriend. He did not take care of anyone else. He did not take care of any pets or other animals. In terms of dressing and bathing, he had problems bending, kneeling, and twisting. In terms of shaving and caring for his hair, he had problems turning his neck. In terms of using the toilet, he had problems bending and kneeling. In terms of driving, he had problems when he turned his neck or sat too long. He prepared his own meals and it took him two to three hours. He was not able to do household chores, or outdoor chores. He did not go outside much anymore. He drove. He went grocery shopping once a month. He paid the bills. He counted change. He handled a savings account. He used a checkbook. His hobbies and interests included playing sports. He did not do them anymore. He could not play basketball or football anymore. He spent time with others on the weekends just chilling and watching ball games.

Although the claimant has described daily activities[] which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.

There is no medical evidence of record to support the claimant's contention that he [h]as to recline five or six hours in an eight-hour workday, or the equivalent thereof. It is noted that the records contain no evidence that the claimant reported such to any medical source.

Per Dr. Cook, there are no [current] x-ray reports in the claimant's chart since he has no medical insurance, yet the claimant apparently has funds for alcohol and cigarettes, which raises an issue of credibility.

As for the opinion evidence, Dr. Turnley with Orthopedic Specialists of Alabama completed a Work Status Form indicating that the claimant could return to work with no limitations on October 10, 2007. Dr. Turnley completed a Work Status Form indicating that the claimant could return to work with no limitations on December 5, 2007. Dr. Turnley completed a Work Status Form indicating that the claimant could return to work with no limitations on January 9, 2008. Dr. Turnley opined on September 4, 2008 that the claimant was at maximum medical improvement. She reviewed his case in its entirety. Dr. Turnley issued a zero percent impairment with no restrictions. Dr. Turnley completed a Work Status Form indicating that the claimant could return to work with no limitations on September 4, 2008.

I give substantial weight to Dr. Turnley's opinion regarding the claimant's functional abilities. Her opinions are well supported by her own clinical examinations and testing.

Pursuant to Social Security Ruling 96-6p, I have considered the opinions of Dr. Gregory K. Parker, the State Agency medical consultant who provided a physical residual functional capacity assessment at the initial level of the administrative review process. Dr. Parker indicated on March 11, 2010 that the claimant can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. The claimant can stand and/or walk about 6 hours in an 8[-]hour workday and sit about 6 hours in an 8[-]hour workday. The claimant's ability to push and/or pull is unlimited, other than as shown for lifting and/or carrying. Dr. Parker concluded that the claimant was not disabled because of his physical impairments. Dr. Parker's opinions were reasonably supported by the evidence available at that time, and supportive of the decision being rendered herein.

Dr. Cook completed a medical source statement (physical) on July 1, 2011 indicating that in an 8-hour workday, the claimant can sit 3 to 4 hours but not at one time, and stand[] or walk two to three hours. In an 8-hour workday, the claimant can lift and/or carry 10 pounds occasionally to 5 pounds frequently. The claimant does not require an assistive device to ambulate even minimally in a normal workday. The claimant does not need to avoid dust, fumes, gases, extremes of temperature, humidity and other environmental pollutants. The claimant can rarely perform the following activities: bending and/or stooping movements. The claimant can occasionally perform the following activities: pushing and pulling movement[s] (arm and/or leg controls); climbing (stairs or ladders) and balancing; reaching[,] including overhead; operating motor vehicles and working with or around hazardous machinery. The claimant can frequently perform the following activities: gross manipulation (grasping, twisting, and handling) and fine manipulation (finger dexterity). On the average, the claimant's impairments or treatments would cause him to be absent from work about three times a month. [Dr. Cook found] [t]he limitations set forth above are normally expected from the type and severity of the diagnoses in this case. The diagnoses in this case are confirmed by objective medical findings: physical examination. Dr. Cook stated the medical basis for the restrictions as: No x-ray reports in his chart since he has no medical insurance.

Dr. Cook completed a clinical assessment of pain on July 1, 2011 indicating that the claimant's pain is present to such an extent as to be distracting to adequate performance of daily activities. Physical activity such as walking, standing, bending, stooping, waving of extremities, etc. greatly increases the pain to such a degree as to cause distraction from task or total abandonment of task. Some side effects can be expected from the prescribed medication but these will be only mildly troublesome to the claimant. The claimant's medical condition can reasonably be expected to produce the claimant's pain. The claimant's pain prevents him from

maintaining attention, concentration or pace for periods of at least two hours.

I give little weight to Dr. Cook's medical source statement and clinical assessment of pain.

.      .      .

In this case, I find no objective basis for Dr. Cook's restrictions. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exists good reason[] for questioning the reliability of the claimant's subjective complaints. The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled and the doctor did not specifically address this weakness. The doctor did not have the benefit of reviewing the other medical reports contained in the current record, specifically, the completely normal MRI. The doctor's opinions contrast sharply with the other evidence of record, which renders it less persuasive. As such, I conclude that Dr. Cook's medical source statement (physical) and clinical assessment of pain contained in Exhibit 9 are not entitled to controlling weight.

In sum,. I find that the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.

The objective evidence does not support an inference that the claimant is more limited than as set forth above.

**6.      The claimant is capable of performing past relevant work as an Injection Molding Machine Tender. This work does not require the performance of work[-]related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

.      .      .

At the hearing, I asked the vocational expert to identify work performed by the claimant in the past 15 years, indicating the title of the job, the corresponding *Dictionary of Occupational Titles* (DOT) number, and the skill and exertional level of each job. The vocation expert testified that the

claimant had worked as a Injection Molding Machine Tender (DOT # 556.685-038, Light, Semi-Skilled), Construction Worker (DOT # 869.687-026, Very Heavy, Unskilled, Specific Vocational Preparation [SVP] 2), Automobile Mechanic Lube Worker (DOT # 620.261-030, Medium, Semi-Skilled, SVP 4), Grader—Plywood (DOT # 569.687-034, Light, Semi-Skilled, SVP 3), and Pipe Fitter (DOT # 862.684-022, Heavy, Unskilled).

20 CFR 404.1520(e) provides that an individual will be found "not disabled" when it is determined that a claimant retains the residual functional capacity to perform past relevant work. This includes performance of the actual functional demands and duties of a particular past relevant job or the functional demands and duties of the occupation as generally required by employers throughout the national economy. The vocational expert was queried as to whether the above-described residual functional capacity would preclude the performance of any of the identified jobs. The vocational expert testified that the residual functional capacity would not preclude the performance of work as an Injection Molding Machine Tender.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed.

**7.      The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2009, through the date of this decision (20 CFR 404.1520(f)).**

(Tr. 11, 12, 13, 13-16, 17, 18-20, 20-21 & 21-22 (internal citations omitted; emphasis in original).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.   *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education

and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform his past relevant work as an injection molding machine tender, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff contends that the ALJ failed to fully develop the record and erred in rejecting the opinions of his treating physician, Dr. Roseanne Cook. Because plaintiff essentially contends that the ALJ's rejection of his treating physician's opinions left the record "undeveloped" in terms of his condition and functional limitations—particularly given, in the plaintiff's estimation, the staleness of Dr. Turnley's opinion—this is another instance of a primarily "RFC" appeal and, therefore, the Court need set forth the proper analysis for consideration of this appeal.

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments

---

[2]    This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

and related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'" *Hanna v. Astrue,* 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1) (2011) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level under § 404.929 or at the Appeals Council review level under § 404.967, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); *see also* 20 C.F.R. § 416.946(c) (same), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from his own

medical sources. 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from his impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. §§ 404.1545(a)(4) & 416.945(a)(4).

> (b)   *Physical abilities*.  When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

> (c)   *Mental abilities.*  When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

> (d)   *Other abilities affected by impairment(s).*  Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v.*

14

*Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's rejection of such opinion,[3] 223 Fed.Appx. at 923-924; *see also id.* at

---

[3]       An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security,* 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[4] *Compare, e.g.,*

---

[4]     In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id*. at 924; *see also Hovey v. Astrue,* Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green,* while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue,* No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence. [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart,* 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

(Continued)

16

*Saunders v. Astrue,* 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.") *with* 20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d); *see also Packer v. Astrue,* 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.").

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return

17

to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.

**The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's

request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

In this case, as the undersigned considers the issues raised by plaintiff in this case, it will become apparent that the ALJ linked his RFC assessment—that is, less than the full range of light work—to specific evidence in the record bearing upon Wiggins' ability to perform the physical, mental, sensory and other requirements of work. The plaintiff's primary contention, of course, is that the ALJ improperly accorded the RFC and pain opinions of her treating physician, Dr. Roseanne Cook, little weight instead of the substantial weight they were entitled to receive.

> The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are

supported by substantial evidence, there is no reversible error. *Moore [v. Barnhart]*, 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert, supra,* 396 Fed.Appx. at 655.

In this case, the ALJ accorded "little" weight to Dr. Cook's "medical source statement and clinical assessment of pain." (Tr. 20.) This Court will not again set forth the ALJ's rather lengthy analysis of the opinion evidence offered by Dr. Cook. Instead, the Court simply observes that this portion of the ALJ's decision (*see* Tr. 20) certainly reflects an articulation of specific and adequate reasons, supported by substantial evidence, for rejecting the various opinions offered by Dr. Cook. *See Gilabert, supra,* 396 Fed.Appx. at 655. In particular, this Court agrees with the ALJ that Dr. Cook's opinions are inconsistent with her own medical records. (*See* Tr. 20 ("I find no objective basis for Dr. Cook's restrictions. . . . The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled and the doctor did not specifically address this weakness.").) The sole "positive" objective findings noted by Dr. Cook[5] consist of the following: (1) on March 3, 2010, tenderness to palpation over 7-8 of the cervical spine (Tr. 271); (2) on April 21, 2010, positive straight-leg raising on the left side (Tr. 296); and (3) on July 1, 2011, pain with flexion, inability to stoop, and inability to walk on heels (Tr. 314). However, these objective findings are relatively benign and, as the ALJ reiterates time and again, do not reasonably support the limitations contained in Dr. Cook's physical medical source statement and pain assessment (*compare* Tr. 20 (Cook's reports do not contain the type of clinical and laboratory abnormalities one would expect to see if the plaintiff was disabled) *with* Tr. 21 ("The record does not contain objective signs and findings that

---

[5]     As pointed out by the ALJ, Dr. Cook and her office staff often failed to conduct a physical examination of Wiggins. (*Compare* Tr. 16 *with* Tr. 314-315.)

could reasonably be expected to produce the degree and intensity of pain and limitations alleged.")), particularly when other objective findings made by Dr. Cook are taken into account, namely: (1) on March 3, 2010, plaintiff had good range of motion of c-spine and merely reported "aching" over L3-5 (Tr. 271); (2) on April 21, 2010, there was good flexion of the neck and good rotation to both sides and Wiggins was encouraged to daily exercise his neck and back (Tr. 296); (3) on May 26, 2010, there was good active range of motion of the back (*id.*); and (4) on February 9, 2011, there was no notation of any positive findings on examination of the neck and back (Tr. 315).  Given the correctness of the ALJ's determination that Dr. Cook's objective examination findings do not support the limitations on functioning reflected in the treating physician's physical medical source statement and pain assessment, it is no surprise that the ALJ also rejected those opinions because they were based on  the claimant's own subjective reports of symptoms and limitations (*see* Tr. 20).[6]  That Dr. Cook let plaintiff's complaints guide her completion of the physical medical source statement and pain assessment simply cannot be gainsaid in light of the dearth of objective findings and the fact that during several of plaintiff's appointments Dr. Cook performed no "[p]hysical exam" (*see* Tr. 302; *compare id. with* Tr. 314-315) but at all times prominently noted Wiggins' subjective complaints of pain (Tr. 271, 296 & 314-315).  Accordingly, the ALJ did not err in according Dr. Cook's opinions "little" weight.

Plaintiff additionally contends that the ALJ failed to fully and fairly develop the record in this case. It is plaintiff's contention that Dr. Michelle Turnley's September 4,

---

[6]     Although the plaintiff did not raise the ALJ's evaluation of his subjective complaints of pain (and limitation) as a separate issue in his brief (*see* Doc. 14), the Court does note that the ALJ's assessment of plaintiff's complaints of disabling pain and functional restrictions is supported by substantial evidence.

2008 opinion is outdated and is not relevant to the time period in question, the alleged

onset of disability being December 17, 2009. When this "staleness" is combined with the

ALJ's rejection of Dr. Cook's physical medical source statement and pain assessment

plaintiff's argues that the record is left "void of a treating or examining physician's

opinion regarding [his] condition and functional limitations[]" and, as a consequence,

the ALJ had a duty to develop the record by ordering a consultative examination in

order to make an informed decision (Doc. 14, at 6). Even if the undersigned totally

agrees with plaintiff that the ALJ was left without an opinion from a treating or

examining physician regarding his functional limitations,[7] this does not mean that the

ALJ necessarily had to obtain a consultative examination to make an informed decision

in this case regarding those functional limitations. This is because substantial evidence

of record supports the ALJ's determination that plaintiff retains the residual functional

capacity to perform less than the full range of light work. (*See* Tr. 12 ("**I find that the**

**claimant has the residual functional capacity to perform less than the full range of**

---

[7]     The undersigned is hesitant to totally disregard Dr. Turnley's September 4, 2008 opinion as outdated and irrelevant to his claim of an onset of disability beginning December 17, 2009. For starters, when Dr. Cook first examined plaintiff, on March 3, 2010, she related the onset of problems with his neck and back to a 2007 on-the-job injury (Tr. 271), and gave consistent testimony to that effect during the administrative hearing on July 6, 2011 (*see* Tr. 35). In addition, Dr. Cook clearly felt that the medical records from Orthopedic Specialists of Alabama (including those of Dr. Turnley) would be of assistance to her as she wanted those records. (*Compare* Tr. 271 ("Get med records OAS—Dr. Turney[.]") *with* Tr. 314 ("Get xray reports from OAS[.]").) Moreover, the only reason plaintiff claimed a disability onset date of December 17, 2009, as opposed to an earlier date, is because that was the last date he worked for the "temp service[.]" (Tr. 39.) Finally, there is no evidence of record outlining plaintiff's physical condition from the alleged onset date of December 17, 2009 through March 3, 2010 and, in truth, until July 1, 2011, there is no medical evidence of record which even begins to suggest that plaintiff's condition is disabling in nature. For all of these reasons and because there is nothing about Dr. Turnley's September 4, 2008 opinion that it is at all inconsistent with the evidence of record up until July 1, 2011—and given the December 17, 2009 to March 3, 2010 vacuum, indeed a September 4, 2008 to March 3, 2010 vacuum (*see* Tr. 15)—the undersigned fails to understand how and why Dr. Turnley's opinion is outdated and totally irrelevant to plaintiff's claim for disability benefits in this case.

**light work as defined in 20 CFR 404.1567(b). Function by Function: No climbing ladders, ropes, scaffolds; occasional climbing of ramps and stairs; occasional balancing, kneeling, crouching, crawling, stooping; frequent reaching; avoid concentrated exposure to vibration."**).) Such substantial evidence consists of the very benign objective findings recorded by Dr. Cook (Tr. 271, 296 & 314-315)[8] and the March 11, 2010 physical residual functional capacity assessment of non-examiner Dr. Gregory Parker, same being indicative of the ability to perform medium work (Tr. 274-281; *compare id. with* Tr. 19 ("Dr. Parker's opinions were reasonably supported by the evidence available at that time, and supportive of the decision being rendered herein.")).[9] *Cf. Green, supra,* 223 Fed.Appx. at 923-924.

Because substantial evidence of record supports the ALJ's determination that Wiggins could perform less than the full range of light and plaintiff makes no argument that this residual functional capacity would preclude his performance of his past relevant work as an injection molding machine tender, the ALJ's fourth-step determination is due to be affirmed. *Compare Green, supra,* 223 Fed.Appx. at 923 ("[T]he burden lies with the claimant to prove her disability. . . . In the fourth step of that analysis, the ALJ determines the claimant's RFC and her ability to return to her past

---

[8]     This Court agrees with the ALJ that these objective findings by Dr. Cook—particularly when considered together with all of her other objective findings—are not inconsistent with the ability to perform less than a full range of light work, as found by the ALJ (*see* Tr. 12), as perhaps would be the case had Dr. Cook indicated significant neurological deficits, muscle spasm, muscle wasting, muscle atrophy or weakness, and limitation of motion.

[9]     In addition, for the reasons previously indicated, Dr. Turnley's September 4, 2008 opinion is not wholly irrelevant to plaintiff's claim for disability benefits with a stated onset of December 17, 2009. (*See* Tr. 220 ("He ambulates freely and without an assist device with normal gait and station. . . . Motor and sensory in the lower extremities remains grossly intact with no change. . . . Today he is at MMI. Reviewed his case in its entirety. Issued a 0% impairment with no restrictions, and it is really unnecessary for him to have any medical care under his Work Comp insurance.").) This opinion obviously supports the determination that plaintiff retains the residual functional capacity to perform less than the full range of light work.

relevant work.") *with Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 48 (11th Cir. Oct. 26, 2012) ("'The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits.'") and *Conner v. Astrue,* 415 Fed.Appx. 992, 995 (11th Cir. Feb. 28, 2011) ("An individual who files an application for Social Security Disability . . . Benefits must prove that []he is disabled.").

<u>**CONCLUSION**</u>

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 14th day of August, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**